**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DESHAWN CARY HENDRIX,

      Petitioner,

                                  CASE NO. 2:13-CV-11902

v.                                HONORABLE LAWRENCE P. ZATKOFF
                                      UNITED STATES DISTRICT JUDGE

JOHN PRELESNIK,

      Respondent.

_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS**
**AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO**
**APPEAL IN FORMA PAUPERIS**

DeShawn Cary Hendrix ("Petitioner"), confined at the Handlon Correctional Facility in

Ionia, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  In his

*pro se* application, petitioner challenges his conviction for armed robbery, M.C.L.A. 750.529; first-

degree home invasion, M.C.L.A. 750.110a(2); and felony firearm, M.C.L.A. 750.227b.  Petitioner

was sentenced to 8 to 15 years imprisonment for the armed robbery conviction, 5 to 20 years

imprisonment for the first-degree home invasion conviction, and two years imprisonment for his

felony-firearm conviction.  For the reasons stated below, the petition for writ of habeas corpus is

DENIED.

**I.  Background**

Petitioner was convicted following a jury trial in the Wayne County Circuit Court.  The

evidence at trial established that Amal Unis ("Ms. Unis") and her daughter Deyana were robbed at

gunpoint by petitioner and another man at their house in Dearborn, Michigan on August 29, 2005.

Petitioner gained entry to their house by claiming that he worked for an alarm company.  After

gaining entry to the house and ordering Ms. Unis and her daughter to the ground at gunpoint, petitioner called another man, who came into the house and assisted him in the robbery. The two men stole money and jewelry from the home before locking Ms. Unis and her daughter in a closet before leaving. (Tr. 1/6/09, pp. 160-85; Tr. 1/7/09, pp. 16-18; 139-43).

Following the robbery, Ms. Unis went to a neighbor's house and called the police. When the police arrived shortly thereafter, Ms. Unis gave them a description of the men who had been in her house. Ms. Unis testified that she told the police that the gunman had a tattoo on his arm. The tattoo was of a fist, and the letters R.I.P. were also on his arm. The gunman had another tattoo on the other arm that looked like a rope or a chain. The tattoo of the fist and the initials R.I.P. were on the inside of the gunman's arm, below the elbow. Ms. Unis was at gunman's side most of the time. Ms. Unis got to eye level with gunman, however, when Ms. Unis and her daughter were in the walk-in closet with him. Ms. Unis looked at the gunman to keep his image in her mind. Ms. Unis saw the gunman's eyes, which she testified that she would never forget. (Tr. 1/6/09, pp. 188-96). The day after the robbery, Ms. Unis met with a police sketch artist, who drew a sketch of the gunman based on Ms. Unis's description of him, particularly his eyes. The sketch artist showed Ms. Unis the sketch and it looked pretty good. (Tr. 1/7/09, pp. 20-21).

Detective Sergeant Anne Kanitra testified that an identifiable fingerprint was obtained from a file cabinet in Ms. Unis' home, which was determined to be that of one Terrell Jones. Police obtained a search warrant and searched Jones' residence, from which the police found three items that had been taken from Ms. Unis' home. After that search warrant was executed, the case went cold. The police had no information on the second suspect, the person who turned out to be petitioner, other than a description of an individual as a black male, 5'6" to 5'8," and heavyset,

weighing 220 to 240 lbs. (*Id.,* pp. 114-15).

From 2005 to 2008, the police had no leads as to the other suspect (*Id.* pp. 73-75), and Ms. Unis did not hear anything from the police regarding this case.  In September 2008, the police received an anonymous telephone call, and the caller gave the police the name of petitioner as a possible suspect to the robbery.  Police searched different databases and obtained a photograph of petitioner.  During the course of the database search, the police learned that petitioner had a twin brother.  Detective Marchetti obtained a photograph of this twin brother.  The photograph of the twin looked similar in features and appearance to the suspect, but he could not tell if the twin was an identical twin of the suspect.  The police ran a criminal record of the twin to see if he had ever been arrested.  Detective Sergeant Gary Marchetti checked four or five sources to determine whether the twin brother had any tattoos.  Two of those four or five sources listed the twin as having only one tattoo, that being a cross on his left hand.  Sgt. Marchetti interviewed petitioner.  Although he looked to see if petitioner had any tattoos, he did not see a tattoo of a cross on petitioner's left hand. (*Id.,* pp. 116-20).

Based on the foregoing information, Sergeant Kanitra obtained a photograph of petitioner and put together a photo lineup which included petitioner's photograph but did not include a photograph of petitioner's twin brother.  Sergeant Kanitra showed the photo lineup to Ms. Unis at her home on September 24, 2008, and informed Ms. Unis that police might have a lead in the case. Without any hesitation, Ms. Unis identified petitioner as being the gunman. (Tr. 1/7/09, pp. 26-29). When Ms. Unis made her selection from the photo array, Sergeant Kanitra wrote, "Amal looked at the group and immediately stated number five, the eyes.  I got a good look at him when he was at the house.  I talked to him face-to-face and remember him." (*Id.,* pp. 31-32).  Ms. Unis was also

3

shown two photographs, which she identified as the tattoos on petitioner's arm. (*Id.,* pp. 38-39). Deyana Unis, however, was unable to positively identify petitioner, stating that the number five picture, which was petitioner, and the number six picture, which was another man, both looked familiar, but she could not be sure. (*Id.,* pp. 75-82).

At trial, Ms. Unis positively identified petitioner as the gunman who came to her house and pointed the weapon at her. (Tr. 1/6/09, p. 188). Michelle Hendrix, petitioner's mother, testified for the defense.  Ms. Hendrix testified that petitioner and his brother Dewayne Hendrix are identical twins and she sometimes had some trouble differentiating between her two sons.  Ms. Hendrix testified that both of her sons had tattoos; both had tattoos of crosses, praying hands and a rest-in-peace, although not in the same locations.  Ms. Hendrix testified that Dewayne had a tribal band tattoo and Deshawn did not; Deshawn had a RIP on his right arm, Dewayne had one in the same space but on the opposite arm. (*Id.*, pp. 167, 169, 171-173, 176, 187).

Dearborn Police Officer Robert Wolf was called by the defense.  Officer Wolf was the officer who responded to the Unis home, interviewed Ms. Unis and got descriptions from the victims.  Officer Wolf testified that there was nothing in his report about tattoos. (Tr. 1/08/2009, pp. 19-21).

Petitioner's conviction was affirmed on appeal. *People v. Hendrix,* No. 291016 (Mich.Ct.App. December 9, 2010); *lv. den.* 489 Mich. 972, 799 N.W.2d 8 (2011).

Petitioner filed a post-conviction motion for relief from judgment which was denied. *People v. Hendrix*, No. 08-14944-01-FC (Third Circuit Court for the County of Wayne, February 22, 2012). The Michigan appellate courts denied petitioner leave to appeal. *People v. Hendrix*, No. 309638 (Mich.Ct.App. September 19, 2012); *lv. den.* 493 Mich. 952, 828 N.W.2d 46 (2013).

Petitioner seeks a writ of habeas corpus on the following grounds:

I.    Hearsay testimony by police officers and comments and arguments by the prosecutor about the content of an anonymous call identifying [or] naming Hendrix as a perpetrator deprived Hendrix of a fair trial, due process of law, and his Sixth Amendment right to confrontation; further, trial counsel's failure to object to the testimony and to protect Hendrix's constitutional rights constituted a denial of counsel under the Sixth Amendment.

II.   The conviction was not supported by the great weight of the evidence and the trial court's denial of a motion for new trial was clear error and an abuse of discretion.

III.  The trial court's refusal to give the jury the deadlocked jury instruction CJI2d 3.12 twice after the jury indicated it had reached an impasse, was error which led to a coerced verdict in contravention of Hendrix's Sixth and Fourteenth Amendment rights, and Const. 1963, art. 1 §§ 17, 20, to a properly instructed jury and due process of law.

IV.   The district court's correcting of the prosecutor's misstatement of fact pierced the veil of judicial impartiality denying Hendrix a fair and impartial preliminary examination and counsel's failure to object greatly prejudiced Hendrix and denied him the effective assistance of counsel.

V.    The trial court violated Hendrix's right to due process and a fair trial when the prosecutor admitted into evidence the anonymous tip to prove the identity of Hendrix in violation of his constitutional right to confrontation. U.S. Const. amend VI and XIV.

VI.   Hendrix was denied the effective assistance of counsel as guaranteed by the Sixth Amendment of the Unites States Constitution, where trial counsel failed to object to inadmissible evidence or to preserve these issues for appellate review and appellate counsel failed to discover the errors and properly address them. U.S. Const. amend. VI.

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of

1996 (AEDPA), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of

5

the claim–

> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010)(internal quotations omitted).  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct.770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

### III.  Discussion

#### A.  Claims # 1 and # 5.  The confrontation claims.

6

In his first and fifth claims, petitioner contends that his right to confrontation and his right to a fair trial were violated by the admission of evidence that the police received information from an anonymous informant identifying petitioner as one of the suspects in the crime.

Out of court statements that are testimonial in nature are barred by the Sixth Amendment Confrontation Clause unless the witness is unavailable and the defendant has had a prior opportunity to cross-examine the witness, regardless of whether such statements are deemed reliable by the court. *See Crawford v. Washington,* 541 U.S. 36, 68-69 (2004). However, the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Id.,* at 59, n. 9; *See also Tennessee v. Street*, 471 U.S. 409, 414 (1985)(defendant's rights under the Confrontation Clause were not violated by introduction of an accomplice's confession for the nonhearsay purpose of rebutting defendant's testimony that his own confession was coercively derived from the accomplice's statement). Indeed, "in some circumstances, out of court statements offered for the limited purpose of explaining why a government investigation was undertaken have been determined not to be hearsay." *United States v. Gibbs*, 506 F. 3d 479, 486 (6th Cir. 2007)(quoting *United States v. Martin*, 897 F. 2d 1368, 1371 (6th Cir. 1990)). Evidence that is provided merely by way of background or is offered only to explain how certain events came to pass or why law enforcement officers took the actions that they did is not offered for the truth of the matter asserted, and thus cannot trigger a Confrontation Clause violation. *See U.S. v.Warman,* 578 F. 3d 320, 346 (6th Cir. 2009)(quoting *United States v. Cromer*, 389 F. 3d 662, 676 (6th Cir. 2004)).

In the present case, the officers' testimony about the anonymous tip concerning petitioner's involvement in the crime did not violate the Confrontation Clause because it was not offered to

prove the truth of the matter asserted, but was most likely offered for the nonhearsay purpose of helping the jury to understand the officers' investigation and why they showed a photographic lineup containing petitioner's photograph to the victims. Neither officer testified about the contents of any out-of-court statements nor identified the source of their information. Indeed, "testimony that does not reveal any specific statement made by a confidential informant (or other nontestifying declarant) and merely provides background information regarding the course of investigation does not violate the Confrontation Clause." *U.S. v. Pugh,* 273 Fed. Appx. 449, 455 (6th Cir. 2008); *see also Cromer*, 389 F.3d at 676-77 (testimony of officer that he "had information" about drug dealing occurred at a particular address was permissible as background information even though the jury could link that address to the defendant); *Gibbs*, 506 F. 3d at 486-87 (agent's testimony that parolee told him that defendant, who was charged with being felon in possession of firearms, had long guns hidden in his bedroom, was not hearsay, but instead was offered as background evidence to show why defendant's bedroom was searched, and was not offered for its truth, since it did not bear on defendant's alleged possession of pistol with which he was charged.).

Moreover, assuming that the admission of the anonymous informant's tip violated petitioner's right to confrontation, any such error was harmless. In *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993), the U.S. Supreme Court held that for purposes of determining whether federal habeas relief must be granted to a state prisoner on the ground of federal constitutional error, the appropriate harmless error standard to apply is whether the error had a substantial and injurious effect or influence in determining the jury's verdict. Confrontation Clause violations are subject to harmless error review. *See Bulls v. Jones,* 274 F.3d 329, 334 (6th Cir. 2001). In determining whether a Confrontation Clause violation is harmless under *Brecht*, a court should consider the

8

following factors: "(1) the importance of the witness' testimony in the prosecution's case; (2) whether the testimony was cumulative; (3) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points; (4) the extent of cross examination otherwise permitted; and (5) the overall strength of the prosecution's case." *See Jensen v. Romanowski,* 590 F. 3d 373, 379 (6th Cir. 2009)(citing *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986)).

As the Michigan Court of Appeals noted in rejecting petitioner's claim, *see Hendrix,* at 2, one of the crime victims, Ms. Amal Unis, had a lengthy opportunity to view petitioner during the robbery and home invasion, being in close proximity to him. Ms. Unis immediately identified petitioner at a photo lineup and again at trial. Both Ms. Unis and her daughter testified that the gunman had tattoos, one of which included the letters "R.I.P." Police photographs of petitioner showed that he had tattoos, one of which contained the letters "R.I.P." In light of the strong evidence against petitioner, the admission of the anonymous tip did not have a substantial and injurious effect or influence on the verdict.

**B. Claims # 1 and # 6. The ineffective assistance of counsel claims.**

As part of his first claim and in his sixth claim, petitioner contends that he was denied the effective assistance of trial and appellate counsel.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that

9

counsel's behavior lies within the wide range of reasonable professional assistance. *Id*.  In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689.  Second, the defendant must show that such performance prejudiced his defense. *Id*.  To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.  "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011)(quoting *Harrington*, 131 S. Ct. at 792).  The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

Petitioner first claims that his counsel was ineffective for failing to object to the testimony concerning the anonymous tip.

As mentioned when discussing petitioner's Confrontation Clause claim, testimony concerning the anonymous tip was most likely admitted for a non-hearsay purpose and would not violate the Confrontation Clause, thus, counsel was not ineffective for failing to object to its admission on this basis. *See e.g. U.S. v. Johnson,* 581 F. 3d 320, 328 (6th Cir. 2009).

Moreover, "[T]he prejudice prong of the ineffective assistance analysis subsumes the *Brecht* harmless-error review." *Hall v. Vasbinder*, 563 F.3d 222, 236 (6th Cir. 2009).  Because the admission of the anonymous informant's tip was harmless error, petitioner cannot satisfy *Strickland's* prejudice requirement. *See e.g. Bell v. Hurley,* 97 Fed.  Appx. 11, 17 (6th Cir. 2004).

10

Petitioner was not prejudiced by counsel's failure to object to the admission of this evidence.

In his sixth claim, petitioner also raises several additional ineffective assistance of trial counsel claims that he raised for the first time on his post-conviction motion for relief from judgment. The trial court denied petitioner's motion for relief from judgment pursuant to M.C.R. 6.508(D)(2), on the mistaken belief that petitioner had already raised these claims on his direct appeal. M.C.R. 6.508(D)(2) indicates that a court in Michigan should not grant post-conviction relief if the post-conviction motion "alleges grounds for relief which were decided against the defendant in a prior appeal or proceeding under this subchapter, unless the defendant establishes that a retroactive change in the law has undermined the prior decision[;]" 6.508(D)(2) is a rule of *res judicata* which bars a defendant from re-litigating claims in a post-conviction motion which have already been adversely decided against him or her. Thus, the state courts' reliance on M.C.R. 6.508(D) based on *res judicata* does not bar habeas review of petitioner's claim on the merits. *See Hicks v. Straub,* 377 F. 3d 538, 558, n. 17 (6th Cir. 2004).

Petitioner initially alleges that trial counsel was ineffective because she made few objections. Petitioner, however, does not indicate what evidence or testimony that trial counsel should have objected to. Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell,* 178 F.3d 759, 771 (6th Cir. 1998). Petitioner is not entitled to relief on this claim because it is conclusory.

Petitioner further claims that trial counsel was ineffective for failing to object to the evidence concerning petitioner's tattoos. By petitioner's own admission, however, the tattoos were relevant to establishing petitioner's identity as the gunman. The failure to object to relevant and admissible evidence does not demonstrate ineffective assistance of counsel. *See Alder v. Burt,* 240

11

F. Supp. 2d 651, 673 (E.D. Mich. 2003).

Petitioner next appears to argue that trial counsel should have objected to the in-court identification of him by Ms. Amal Unis because her pre-trial identification was questionable due to the fact that Ms. Unis had been unable to recognize the sketch of the suspect made three years prior to the preliminary examination and that the photo array used in the pre-trial identification somehow implicated another individual.

Petitioner is not entitled to relief on this claim for two reasons. First, petitioner's counsel brought a motion to suppress the identification. A hearing was held on the motion to suppress on the first day of trial. (Tr. 1/6/09, pp. 3-36). At the conclusion of the hearing, the judge denied the motion to suppress, finding that petitioner was not in custody at the time of the photo array, thus, there was no need for counsel to be present at the lineup. The judge further found that the photo array was not suggestive and satisfied constitutional requirements because all six persons in the lineup looked very much alike in terms of their facial hair, their haircuts, and their complexions. (*Id.,* pp. 36-37). Second, petitioner's counsel explored the various problems with Ms. Unis' identification and with the pre-trial identification procedures at trial through the cross-examination of Ms. Unis and the two detectives. Counsel also elicited testimony from Officer Wolf that his police report from the time of the incident did not mention any tattoos. Even though counsel did not object to the in-court identification of petitioner, the decision to attack the credibility of Ms. Unis' identification of petitioner through cross-examination was a reasonable trial strategy that defeats petitioner's ineffective assistance of trial counsel claim. *See Scott v. Elo,* 100 Fed. Appx. 332, 333-34 (6th Cir. 2004).

Petitioner lastly contends that counsel was ineffective for failing to raise a defense that

another person may have been the perpetrator. Petitioner points to the fact that Deyana Unis picked out another person at the lineup. Petitioner, however, has pointed to no other evidence linking this person to the crime. Since there was little or no evidence linking this person to the home invasion and the robbery, trial counsel was not ineffective in failing to pursue a third party culpability defense. *See e.g. Robins v. Fortner,* 698 F. 3d 317, 331 (6th Cir. 2012). To the extent that petitioner argues that defense counsel was ineffective for failing to shift blame of the crime to petitioner's twin brother, the Court notes that counsel presented a defense which mentioned that petitioner and his brother were identical twins with identical tattoos, thus raising the suggestion before the jury that it was petitioner's brother who was responsible for the crime. Petitioner is not entitled to relief on this claim.

Petitioner finally argues that his appellate counsel was ineffective for failing to raise most of his ineffective assistance of trial counsel claims on direct appeal. This Court has already determined that petitioner's ineffective assistance of trial counsel claims are without merit. "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F. 3d 448, 452 (6th Cir. 2010)(internal quotation omitted). Petitioner is not entitled to relief on his claim.

## B. Claim # 2. The great weight of the evidence claim.

Petitioner next claims that the verdict went against the great weight of the evidence,.

A federal habeas court has no power to grant habeas relief on the ground that a state conviction is against the great weight of the evidence. *See Cukaj v. Warren,* 305 F. Supp. 2d 789, 796 (E.D. Mich. 2004); *Dell v. Straub,* 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002); *see also Artis v. Collins,* 14 Fed. Appx. 387 (6th Cir. 2001)(declining to grant certificate of appealability to habeas

petitioner on claim that jury's verdict was against the manifest weight of the evidence). A claim that a verdict went against the great weight of the evidence is not of constitutional dimension, for habeas corpus purposes, unless the record is so devoid of evidentiary support that a due process issue is raised. *Cukaj,* 305 F. Supp. 2d at 796. The test for habeas relief is not whether the verdict was against the great weight of the evidence, but whether there was any evidence to support it. *Dell,* 194 F. Supp. 2d at 648. As long as there is sufficient evidence to convict petitioner of these crimes, the fact that the verdict may have gone against the great weight of the evidence would not entitle him to habeas relief. *Id.*

In the present case, there was sufficient evidence to support petitioner's conviction. Ms. Amal Unis positively identified petitioner as the gunman at a photographic lineup, at the preliminary examination, and at trial. This evidence was sufficient to support petitioner's convictions for armed robbery, home invasion, and felony firearm. *See Brown v. Burt,* 65 Fed.Appx. 939, 944 (6th Cir. 2003). Petitioner is not entitled to relief on his second claim.

**C. Claim # 3. The jury instruction claim.**

Petitioner next contends that the trial judge erred in failing to provide the jurors with the deadlocked jury instruction, CJI 2d 3.12, after they indicated that they were unable to reach a verdict. Petitioner further contends that the judge's instruction to the jurors to continue deliberating coerced them into reaching a verdict.

The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack upon the constitutional validity of a state court conviction is even greater than the showing required in a direct appeal. The question in such a collateral proceeding is whether the ailing instruction so infected the entire trial that the resulting conviction violates due

14

process, not merely whether the instruction is undesirable, erroneous, or even "universally condemned," and an omission or incomplete instruction is less likely to be prejudicial than a misstatement of the law. *See Henderson v. Kibbee*, 431 U.S. 145, 154-155 (1977). The challenged instruction must not be judged in isolation but must be considered in the context of the entire jury charge. *See Jones v. United* States, 527 U.S. 373, 391 (1999). Further, any ambiguity, inconsistency or deficiency in a jury instruction does not by itself necessarily constitute a due process violation. *See Waddington v. Sarausad*, 555 U.S. 179, 190 (2009). It is not enough that there might be some "slight possibility" that the jury misapplied the instruction. *Id.* at 191.

Petitioner first argues that the judge should have given the jurors the deadlocked jury instruction, CJI 2d 3.12, which includes admonitions that the jurors should each "seriously consider the views of your fellow jurors" but also reminds them to maintain their own "honest beliefs."

A trial court's failure to include a reminder that jurors should not abandon their honest convictions or beliefs in its supplemental instruction, in response to the jury's indication of possible deadlock, "is not invariably fatal to the conviction." *See Bedford v. Collins,* 567 F. 3d 225, 238 (6th Cir. 2009). The trial judge in his initial charge to the jury had instructed them that "none of you should give up your honest opinion about the case just because other jurors disagree with you or just for the sake of reaching a verdict." (Tr. 1/8/09, p. 73). The original instruction's caveat to the jurors that they should not give up their "honest opinion" just to reach a verdict obviated the need for the court to give such an admonition in its supplemental instruction to the deadlocked jury. *Id.* Moreover, the lack of any coercive language in the supplemental instruction to the jurors "also diminished the need for an honest-conviction caveat." *Id.* Thus, the failure to give the jurors the deadlocked jury instruction, with its caveat about not surrendering one's honest beliefs, does not

15

entitle petitioner to relief.

Petitioner further argues that the judge's instruction to the jurors to continue deliberating was coercive.  The Michigan Court of Appeals rejected petitioner's claim:

> The trial court initially instructed the jury that it "must continue deliberations." When the jury again indicated it had reached an impasse, the court informed the jury that it would recess for the weekend and that it would be provided copies of the transcripts it had previously requested when deliberations resumed.  This was not unduly coercive, as the trial court did not use pressure or threats and did not force the jury to deliberate for an unreasonable length of time.

> *Hendrix,* Slip. Op. at 4.

It is axiomatic that "a trial court may properly encourage a deadlocked jury to continue its deliberations and attempt to reach a verdict." *U.S. v. Aloi,* 9 F. 3d 438, 443 (6th Cir. 1993)(citing *Allen v. United States*, 164 U.S. 492, 501–02 (1896)).  "A charge that strays too far from the charge approved in *Allen* will rise to the level of a constitutional violation only if 'in its context and under all the circumstances, [the charge] ... was coercive.'" *Id.* (quoting *Williams v. Parke*, 741 F. 2d 847, 850 (6th Cir. 1984)(quoting *Jenkins v. United States*, 380 U.S. 445, 446(1965)).  The judge's instruction to the jurors to continue deliberating was not unduly coercive, because the judge "did not pressure a decision in a particular direction." *U.S. v. Lash*, 937 F. 2d 1077, 1086 (6th Cir. 1991). The Michigan Court of Appeals' determination that the judge's instruction to the deadlocked jurors was not unduly coercive was reasonable, thus, petitioner is not entitled to habeas relief on his claim. *See Early v. Packer,* 537 U.S. 3, 10-11 (2002).

**D.  Claim # 4.  The judicial misconduct claim.**

Petitioner lastly contends that the examining magistrate at the preliminary examination pierced the veil of judicial impartiality when the magistrate corrected the prosecutor's mischaracterization of one of the witnesses.  Petitioner further claims that trial counsel was

16

ineffective for failing to object to the judicial misconduct.

Petitioner has failed to state a claim upon which habeas relief can be granted. A prior judicial hearing is not a prerequisite to prosecution by information. *See Gerstein v. Pugh*, 420 U.S. 103, 119 (1975). There is no federal constitutional right to a preliminary examination. *See United States v. Mulligan*, 520 F. 2d 1327, 1329 (6th Cir. 1975); *Dillard v. Bomar*, 342 F. 2d 789, 790 (6th Cir. 1965). Moreover, petitioner was found guilty after a jury trial. A jury's guilty verdict renders harmless any error in the charging decision. *See United States v. Mechanik*, 475 U.S. 66, 73 (1986). Any potential bias by the examining magistrate at the preliminary examination is harmless and unreviewable in light of the jury's guilty verdict. *See Mitchell v. McCaughtry*, 291 F. Supp. 2d 823, 832 (E.D. Wis. 2003). Because any judicial misconduct at the preliminary examination was harmless, petitioner was not prejudiced by his counsel's failure to object. Petitioner is not entitled to relief on his final claim.

### IV. Conclusion

The Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability to petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id*. at 484. "The district

court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because jurists of reason would not find this Court's resolution of his claims to be debatable. *See Strayhorn v. Booker*, 718 F. Supp. 2d 846, 854 (E.D. Mich. 2010). The Court will also deny petitioner leave to appeal *in forma pauperis*, because the appeal would be frivolous. *See Myers v. Straub*, 159 F. Supp. 2d 621, 629 (E.D. Mich. 2001).

### V.  ORDER

Accordingly, the Petition for Writ of Habeas Corpus is DENIED.

The Court further DENIES a certificate of appealability.

The Court further DENIES petitioner leave to appeal *in forma pauperis*.

S/Lawrence P. Zatkoff
HON. LAWRENCE P. ZATKOFF
Dated: May 13, 2014                  UNITED STATES DISTRICT JUDGE

18